PILLSBURY WINTHROP SHAW PITTMAN LLP
PATRICK HAMMON (255047)
patrick.hammon@pillsburylaw.com
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone:  650.233.4500
Facsimile:   650.233.4545

Attorney for Defendant,
ROBLOX CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEY HEYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBLOX CORPORATION, a Delaware corporation, doing business as Roblox<br><br>Defendant. | Case No. 2:25-cv-03236-MWC-AJR<br><br>**DEFENDANT ROBLOX CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:       July 11, 2025<br>Time:      1:30 pm<br>Location:  Courtroom 6A, 6th Floor<br>Judge:     Hon. Michelle Williams Court |

TO THE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 11, 2025 at 1:30 p.m., or as soon thereafter as may be heard, before The Honorable Michelle Williams Court, in Courtroom 6A of the above-entitled court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Roblox Corporation ("Roblox"), by its attorneys, hereby moves to dismiss Plaintiff's Complaint. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 14, 2025.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the Complaint and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

Dated: May 22, 2025          PILLSBURY WINTHROP SHAW PITTMAN LLP


/s/ Patrick Hammon
PATRICK HAMMON

Attorney for Defendant,
ROBLOX CORPORATION

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 7

II.   BACKGROUND .................................................................................................. 8

III.  LEGAL STANDARD .......................................................................................... 11

IV.   ARGUMENT ....................................................................................................... 12

      A.    Plaintiff's Copyright Infringement Claim Fails Because Plaintiff
            Has Not Registered the Apple Dance. ....................................................... 12

      B.    Plaintiff's Copyright Infringement Claim Fails Because Roblox's
            Use of the Apple Dance was Authorized. ................................................... 15

            1.    Roblox's Use of the Apple Dance was Authorized Because
                  There Was a License Agreement in Place. ...................................... 15

            2.    Even if an Agreement was Not Finalized, Roblox's Use of
                  the Apple Dance was Authorized Because the Parties were
                  in Active Licensing Negotiations. .................................................. 17

      C.    Plaintiff's Unjust Enrichment Claim Is Preempted by the
            Copyright Act. ............................................................................................. 20

V.    CONCLUSION ................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Agua Caliente Band of Cahuilla Indians v. Riversider Cnty.*
    181 F. Supp. 3d 727 (C.D. Cal. 2016) ...................................................... 17

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ......................................................................................... 11

*Asset Mktg. Sys., Inc. v. Gagnon*
    542 F.3d 748 (9th Cir. 2008) ...................................................................... 18

*Astiana v. Hain Celestial Grp., Inc.*
    783 F.3d 753 (9th Cir. 2015) ...................................................................... 22

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ...................................................................... 12

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ......................................................................................... 11

*Brantley v. Epic Games, Inc.*
    463 F. Supp. 3d 616 (D. Md. 2020) ........................................................... 21

*Christian v. Mattel, Inc.*
    286 F.3d 1118 (9th Cir. 2002) .................................................................... 14

*Craigslist Inc. v. 3Taps Inc.*
    942 F. Supp. 2d 962 (N.D. Cal. 2013) ..................................................... 13

*Deetsch v. Lei*
    2023 WL 6373073 (S.D. Cal. July 21, 2023) .......................................... 14

*DTS, Inc. v. Nero AG*
    2015 WL 12829611 (C.D. Cal. Oct. 21, 2015) ...................................... 15

*Effects Assocs., Inc. v. Cohen*
    908 F.2d 555 (9th Cir. 1990) ..................................................... 15, 18, 19

*Field v. Google Inc.*
    412 F.Supp. 2d 1106 (D. Nev. 2006) ...................................................... 17

*Fisher v. Nissel*
    2022 WL 16961479 (C.D. Cal. Aug. 15, 2022) ............................... 13, 17

DEFENDANT ROBLOX CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No: 2:25-cv-03236-MWC-AJR

*Fosson v. Palace (Waterland), Ltd.*
   78 F.3d 1448 (9th Cir. 1996) ............................................................... 15, 16

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*
   586 U.S. 296 (2019) ................................................................... 12, 13, 14

*Gen. Elec. Co. v. Porter*
   208 F.2d 805 (9th Cir. 1953) ....................................................................... 17

*Goddard v. Google, Inc.*
   640 F.Supp.2d 1193 (N.D. Cal. 2009) ........................................................ 11

*Gonzalez v. Planned Parenthood*
   759 F.3d 1112 (9th Cir. 2014) ..................................................................... 17

*Holomaxx Techs. v. Microsoft Corp.*
   783 F. Supp. 2d 1097 (N.D. Cal. 2011) ...................................................... 11

*I.A.E., Inc. v. Shaver*
   74 F.3d 768 (7th Cir. 1996) ............................................................. 18, 19, 20

*Idema v. Dreamworks, Inc.*
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...................................................... 21

*In re Gilead Scis. Sec. Litig.*
   536 F.3d 1049 (9th Cir. 2008) ..................................................................... 11

*Interscope Recs. v. Time Warner, Inc.*
   2010 WL 11505708 (C.D. Cal. June 28, 2010) .......................................... 19

*Izmo, Inc. v. Roadster, Inc.*
   2019 WL 2359228 (N.D. Cal. June 4, 2019) .............................................. 14

*Kodadek v. MTV Networks, Inc.*
   152 F.3d 1209 (9th Cir. 1998) ............................................................... 12, 20

*Laws v. Sony Music Ent., Inc.*
   448 F.3d 1134 (9th Cir. 2006) ..................................................................... 21

*Leszczynski v. Kitchen Cube LLC*
   2024 WL 1829620 (C.D. Cal. Apr. 17, 2024) ............................................ 13

*Lloyd v. Schlag*
   884 F.2d 409 (9th Cir. 1989) ....................................................................... 14

*Nabeel v. Meta Platforms, Inc.*
    2023 WL 9419151 (C.D. Cal. Nov. 30, 2023) ..........................................................13

*Reed Elsevier, Inc. v. Muchnick*
    559 U.S. 154 (2010)..............................................................................................13

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ................................................................................17

*Tarvin v. Olly Pub. Benefit Corp.*
    756 F. Supp. 3d 797 (C.D. Cal. 2024) ..................................................................22

*UAB "Planner 5D" v. Facebook, Inc.*
    2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ......................................................14

## **STATUTES**

17 U.S.C. § 102(a)(4) ................................................................................................21

17 U.S.C. § 106 ..............................................................................................20, 21

17 U.S.C. § 301(a) ....................................................................................................20

17 U.S.C. § 411(a) ...................................................................................7, 9, 12, 14

17 U.S.C. § 501 ....................................................................................................8, 15

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION**

Plaintiff Kelley Heyer's ("Plaintiff's") Complaint paints a misleading narrative about a solo creator whose work was allegedly exploited by a big tech company. But the reality is far less dramatic, and far more ordinary: this is just a case about a business deal. Plaintiff voluntarily entered into negotiations with Roblox Corporation ("Roblox") and then bargained for compensation in connection with the use of her dance. Roblox relied on that agreement in good faith. Only after the promotion launched did Plaintiff attempt to renege on the terms—and when she could not renegotiate them, she shifted tactics—from the bargaining table to the courtroom.

Plaintiff's attempt at turning a business dispute into a legal one, however, fails from the start as there are two fatal problems with her copyright claim: **first**, she has not registered the alleged work and, **second**, she gave Defendant Roblox permission to use it. These facts, properly before the Court on this Motion, invalidate Plaintiff's claims from the outset.

At issue is a short dance sequence—the so-called "Apple Dance"—that Plaintiff alleges showed up as a digital avatar emote during a Roblox promotion without her authorization. From that, she spins claims of copyright infringement and unjust enrichment. But without a valid registration and in the face of clear evidence of consent, the Complaint never gets off the ground. It fails as a matter of law and must be dismissed—and with prejudice—under Rule 12(b)(6).

**First**, Plaintiff's claim for copyright infringement fails because the Apple Dance is not registered with the Copyright Office. Under 17 U.S.C. § 411(a), that deficiency bars any infringement claim.

**Second**, Plaintiff concedes that she entered into license negotiations with Roblox. These negotiations culminated in an agreement that Plaintiff never alleges to have revoked, rescinded, or repudiated. In light of that agreement (and those discussions), Plaintiff cannot claim that Roblox's usage of the Apple Dance was

unauthorized.

**Third**, Plaintiff's unjust enrichment claim is preempted in its entirety by federal copyright law. It merely repackages her infringement allegations and chases the same relief available under 17 U.S.C. § 501 *et seq.*

For each of these reasons, and those set forth in more detail below, the Complaint must be dismissed in its entirety.

## II.    BACKGROUND

Roblox operates an online platform where Users create, share, and monetize immersive 3D experiences. (*See* Complaint ("Compl.") ¶ 11.) Plaintiff alleges that she is the creator of a brief series of simple dance moves, which, when put together, she refers to as the "Apple Dance." (Compl. ¶ 12.) Plaintiff alleges that she first published the so-called "Apple Dance" in a TikTok video on June 15, 2024. (*Id.*) The dance was set to a song by the Atlantic Records artist Charli xcx and, according to Plaintiff, went "viral," leading to increased engagement and commercial activity related to Charli xcx's music. (*Id.* ¶¶ 12, 15.)

Plaintiff alleges that, following the success of the Apple Dance, Roblox—in connection with Warner Music Group/Atlantic Records—began exploring a promotion involving Charli xcx within one of its user-generated games. (Compl. ¶ 15.) As part of this initiative, Plaintiff acknowledges that Roblox reached out to Plaintiff to explore licensing the Apple Dance for use as an avatar "emote," which is, in essence, a user-triggered animation that enables avatars to perform short, repeatable movements. (*Id.* ¶ 16.) Plaintiff admits that she entered into active negotiations with Roblox and that she "indicated she was willing to permit" use of the dance as an emote "on the condition that the parties reach an executed agreement." (*Id.*) Despite these ongoing discussions, Plaintiff claims that Roblox briefly offered the Apple Dance emote for sale between August and November 2024 before the parties were able to finalize a license agreement. (*Id.* ¶¶ 16–18.) Plaintiff asserts that this brief release constituted unauthorized use and, therefore, seeks damages for copyright

infringement and unjust enrichment. She further contends that the brief social dance is entirely her own creation and that she should be recognized as the sole rights holder with respect to the dance moves used in the emote. (*Id*. ¶ 17.)

Noticeably absent from her various filings, however, is any indication that she actually has been granted a copyright for the Apple Dance. Instead, Plaintiff alleges that she filed an application to register the Apple Dance with the U.S. Copyright Office on August 30, 2024, and identifies a purported "case number" (1-14205562001) as support. (Compl. ¶ 12.) Of course, the Copyright Office's public records reveal no registration corresponding to that case number, name, or work title registered to Plaintiff. (Decl. of Patrick Hammon ("Hammon Decl."), ¶ 2, **Exhibit A**.) As of the date of this filing, no registration certificate has been issued in Plaintiff's name for the Apple Dance. (*Id*.) Without a valid registration, Plaintiff is barred from asserting a copyright infringement claim under 17 U.S.C. § 411(a), and the Complaint fails to establish the single-most critical prerequisite to relief.

Also absent from her Complaint is any allegation that Plaintiff ever notified Roblox—formally or informally—that *prior to the release of the emote* she actually ever objected to the release of the emote. Nor does she allege that she issued a takedown request under the Digital Millennium Copyright Act, submitted a cease-and-desist letter, or attempted any other notice prior to initiating litigation. Instead, a review of the actual communications Plaintiff references in her Complaint, which she strategically minimizes as just ongoing "negotiations" (Compl. ¶ 16), reveals that the parties' discussions were actually far more consequential than the Complaint suggests. (Hammon Decl., ¶ 4, **Exhibit C**.) Indeed, the communications she cites demonstrate that the Parties **actually reached an agreement** on August 13, 2024, through which Plaintiff permitted Roblox to use whatever alleged intellectual property she had in the so-called Apple Dance (the "License Agreement"). (*Id*.) Plaintiff's allegation that these communications were only "negotiations" (Compl. ¶ 16) is just not true.

What the communications, in fact, establish is that Warner Music Group

("Warner"), acting in conjunction with Roblox, offered Plaintiff $5,000 for a license. (Hammon Decl., ¶ 4, **Exhibit C**.) Warner, writing on Monday, August 12, 2024, explained to Plaintiff's agent that time was of the essence because Roblox was hoping to roll out the emote in connection with the launch of a Charli xcx event, scheduled for the following Saturday (August 17, 2024) so that Charli xcx's fans could use it during the event. (*Id*.) Warner also explained that, though the event would only last ten days, users would continue to be able to access and use the emote after the event. (*Id*.) The next day, Plaintiff's agent made a counter-offer requesting $7,500, and additional fees. (*Id*.) Warner then accepted Plaintiff's counter-offer by responding that "we should be able to do that, assuming additional fees are within our budget" and that they would "draft up an agreement from your review and countersignature." (Hammon Decl., ¶ 4, **Exhibit C**.) Plaintiff's agent replied that the fees would total $1,500, confirming $9,000 as the final figure. (*Id*.) Roblox then, in acceptance of the terms discussed, released the emote the next day (August 14, 2024), in good faith, just as the parties discussed. (Hammon Decl., ¶ 4.) Roblox, therefore, both relied on—and accepted—the offer from Plaintiff's agent.

What is more are Plaintiff's own public statements–which further undercut her claims. On July 4, 2024, after the Apple Dance had gone viral and was being widely shared, including in connection with Charli xcx content, Plaintiff posted a public message on social media encouraging fans not to demand credit or attribution on her behalf. (Hammon Decl., ¶ 3, **Exhibit B**.) She wrote, "it's okay if someone doesn't tag me in the caption of their dance. It's nice when peolple [*sic*] do but okay if they don't!" (*Id*.) She continued "[t]his whole thing has gotten really huge which is amazing!" (*Id*.) She further stated, "When things blow up on the internet, there will always be a point where it grows beyond something anyone can control. [. . .] If people tag me, that's great, if people don't tag me, that's okay too!!" Plaintiff expressed discomfort with others framing her as "begging" for credit. (*Id*.) She concluded by thanking viewers for supporting something she made "to a song I really

love," and expressed joy at seeing others dance to it. (*Id.*) This public encouragement directly contradicts the notion that Plaintiff viewed the dance's use as unauthorized or damaging.

While Plaintiff portrays herself as a creator denied rightful credit and compensation, the facts alleged in the Complaint, coupled with the public record and the License Agreement at issue here, show that (1) Roblox initiated good-faith negotiations to license her content; (2) the parties agreed to a deal and Roblox created the emote as a result; (3) the emote was subsequently removed; and (4) Plaintiff has no current copyright registration on file for the claimed work. And yet, notwithstanding these glaring deficiencies in her claims, Plaintiff nevertheless still somehow claims (i) statutory damages, (ii) profits, (iii) injunctive relief, and (iv) attorneys' fees—all based on an alleged infringement of a work that has not been recognized under federal copyright law.

## III.    **Legal Standard**

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These factual allegations must raise the right to relief above the "speculative" level and allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept all allegations as true, this rule only extends to "well-pleaded allegations," and is inapplicable to legal conclusions. *Ashcroft*, 556 U.S. at 679. A court may also consider affirmative defenses on a Rule 12(b)(6) motion "when the defense is 'apparent from the face of the [c]omplaint.'" *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103 (N.D. Cal. 2011) (*quoting Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1200 n. 5 (N.D. Cal. 2009)).

Courts are not required to assume the truth of allegations that are contradicted by documents incorporated into the complaint or matters properly subject to judicial notice. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Furthermore, in copyright cases, courts may dismiss claims where the plaintiff fails to plead the existence of a valid copyright registration—a statutory prerequisite to filing suit under 17 U.S.C. § 411(a). *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019). Likewise, when the facts alleged in a complaint show that a claim is barred by preemption or otherwise fails as a matter of law, dismissal at the pleading stage is appropriate. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (affirming Rule 12(b)(6) dismissal of state-law claim preempted by Copyright Act); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV.    <u>Argument</u>

Plaintiff's copyright infringement and unjust enrichment claims against Roblox must be dismissed because (1) Plaintiff lacks a registered copyright; (2) none of the alleged usages at issue were unauthorized; and (3) the unjust enrichment claim is preempted by the Copyright Act.

### A.    <u>Plaintiff's Copyright Infringement Claim Fails Because Plaintiff Has Not Registered the Apple Dance.</u>

As a threshold matter, Plaintiff's copyright claim fails because she has not obtained a valid registration. Under 17 U.S.C. § 411(a), a plaintiff must have a valid registration issued by the Copyright Office before filing a civil copyright infringement action. While Plaintiff alleges that she submitted a registration application for the Apple Dance on August 30, 2024, and references a case number (1-14205562001), (Compl. ¶ 12), public records from the U.S. Copyright Office reveal that a registration corresponding to that case number, work title, or even to Plaintiff's name has not been

issued. (*See* Hammon Decl., ¶ 2, **Exhibit A**.)[1] Thus, as of the filing of this motion, there is no indication that the Copyright Office has issued or approved any registration for the Apple Dance.

The Supreme Court has made clear that merely submitting an application is not enough. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* 586 U.S. 296, 299 (2019) ("[R]egistration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright."). Because no registration has been issued—and it is far from clear that one ever will be—Plaintiff cannot pursue an infringement claim, and the Complaint must be dismissed. *See Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 975 (N.D. Cal. 2013) (citing *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 166 (2010)) (finding that "registration is a 'precondition' for bringing an infringement claim"); *Nabeel v. Meta Platforms, Inc.*, 2023 WL 9419151 at *1 (C.D. Cal. Nov. 30, 2023) (dismissing copyright claim

---

[1] Courts routinely take judicial notice of search results pages from the United States Copyright Office's Public Records Catalog when considering motions to dismiss copyright infringement claims. *See, e.g.*, *Fisher v. Nissel,* No. CV 21-5839-CBM-(KSX), 2022 WL 16961479, at *5 (C.D. Cal. Aug. 15, 2022*); Leszczynski v. Kitchen Cube LLC,* No. 823CV01698MEMFADS, 2024 WL 1829620, at *4 (C.D. Cal. Apr. 17, 2024).

without leave to amend for failure to register).[2]

This lack of registration also dictates that the Complaint should be dismissed without leave to amend. Even if Plaintiff is successful in registering her copyright, "most district courts…have ruled that a plaintiff who improperly files a copyright suit before obtaining registration cannot cure that defect by amending the complaint after registration." *Deetsch v. Lei*, No. 22-CV-1166-RSH-BLM, 2023 WL 6373073, at *9 (S.D. Cal. July 21, 2023). Courts have decided that the failure to meet the registration requirement set forth in 17 U.S.C. § 411(a) cannot be cured because that would undermine the Supreme Court's objectives in deciding *Fourth Estate*. *See Id. See also Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132-WHO, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019). There, the Court made clear that registration is a prerequisite to filing suit and akin to an administrative exhaustion requirement that plaintiffs must satisfy before enforcing their rights. *Fourth Estate*, 139 S. Ct. at 887.

---

[2] Filing a federal copyright lawsuit without confirming that a registration has been issued raises serious concerns. *See Lloyd v. Schlag*, 884 F.2d 409, 412-13 (9th Cir. 1989) (upholding district court's award of sanctions where attorney "unquestionably violated Rule 11" by filing copyright infringement suit without verifying that the purported copyright transfer conferring the right to bring suit was recorded, explaining that "a reasonable attorney admitted to practice before the district court would have discovered that a copyright infringement suit cannot be brought unless and until the copyright transfer has been properly recorded, and ascertained that the recordation has been accomplished."); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128-29 (9th Cir. 2002) (upholding Rule 11 sanctions where attorney failed to perform "even minimal due diligence" to verify infringement-related allegations asserted in the complaint). Given the ease of verifying registration status via the Copyright Office's public database, Plaintiff's failure to do so before filing suit suggests a lack of the reasonable pre-filing inquiry required by Rule 11(b). To be clear, Roblox is **not** claiming anybody should be sanctioned. But where, as here, a plaintiff seeks substantial damages and injunctive relief based on a work that lacks even the threshold protection of registration, the deficiency is more than procedural—it reflects a foundational defect that warrants dismissal with prejudice.

Because Plaintiff has not secured registration, her claim under 17 U.S.C. § 501 must be dismissed in its entirety—and with prejudice.

**B.  <u>Plaintiff's Copyright Infringement Claim Fails Because Roblox's Use of the Apple Dance was Authorized.</u>**

Even assuming Plaintiff could establish valid copyright ownership—which she cannot—her claim fails for an independent reason: the facts alleged, the License Agreement between the parties, and Plaintiff's own public conduct, make clear that Roblox was authorized to utilize the Apple Dance as an emote.

1. <u>Roblox's Use of the Apple Dance was Authorized Because There Was a License Agreement in Place.</u>

Because Plaintiff and Roblox entered into a License Agreement regarding the Apple Dance, the Complaint must be dismissed for failure to allege any copyright infringement. A copyright holder cannot sue for copyright infringement if she granted the defendant license to use the copyright, as is the case here. *See Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 559 (9th Cir. 1990) (noting that a special effects company could not sue the movie-creator defendant for copyright infringement because the company had implicitly granted the defendant a nonexclusive license). The License Agreement is incorporated by reference into the Complaint, and can therefore be considered by the Court, because it forms the basis of Plaintiff's copyright infringement and unjust enrichment claims. *DTS, Inc. v. Nero AG*, No. CV1409791RGKPJWX, 2015 WL 12829611, at *2 (C.D. Cal. Oct. 21, 2015) (incorporating by reference a license agreement between a software company and a sound technology company that was referred to in the complaint where authenticity was not disputed).

Under California law, an "offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Fosson v. Palace (Waterland), Ltd*., 78 F.3d 1448, 1452 (9th Cir. 1996) (citation omitted). Acceptance of an offer does not need to

be in the formal terms "I accept"; indeed, "acceptance is the manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offeror." *Id*. at 1453 (citation omitted). The communications put at issue by Plaintiff's Complaint show that Warner Music Group, working in conjunction with Roblox, contacted Plaintiff's agent on August 12, 2024, offering $5,000 to license the Apple Dance in connection with a Charli xcx promotion that upcoming Saturday. (Hammon Decl., ¶ 4, **Exhibit C**.) Plaintiff's agent countered with a request for $7,500 plus additional fees, and Warner responded, "we should be able to do that," asking only for clarification of the additional charges. Plaintiff's agent replied that the fees would total $1,500, confirming $9,000 as the final figure. (*Id*.) In acceptance of these terms, Roblox uploaded the Apple Dance onto the Roblox platform. The Parties, therefore, had an agreement in place, and Roblox acted appropriately.

These facts mirror those in *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448 (9th Cir. 1996). In *Fosson*, a music composer argued that—despite a record of back-and-forth negotiations evidencing proposed licensing terms between himself and film producers regarding one of the composer's creative works—the film producers never formally accepted the composer's offer (the proposed terms) and, instead, the film producers used the composer's work without permission in their film. *Id*. The court rejected this theory, noting that even if there had been no formal acceptance of terms, the film producers' use of the composition in the film before the composer attempted to revoke the offer constituted the film producers' acceptance under contract law, thereby forming an enforceable agreement for the proposed fee offered by the composer. *See id*. at 1453 n.6. Because the composer never properly rescinded the agreement and had waived the right to do so, his claim of copyright infringement failed as a matter of law. *Id*. Similarly, here, Roblox accepted Plaintiff's offer to license her alleged copyright for $7,500 plus additional fees via email and accepted the terms through upload of the Apple Dance onto the Roblox platform. Plaintiff cannot now contest that agreement when she did nothing whatsoever to object (let

alone send a takedown notice) after Roblox began offering the Apple Dance in reliance on the Parties' License Agreement. Compare *id.* with Hammon Decl., ¶ 4, **Exhibit C**.[3]

Plaintiff's claims, therefore, should also be dismissed for the independent reason that the parties had a valid licensing agreement in place that bars this lawsuit.

2. <u>Even if an Agreement was Not Finalized, Roblox's Use of the Apple Dance was Authorized Because the Parties were in Active Licensing Negotiations.</u>

Even if the Court accepts Plaintiff's allegation (contradicted by documents incorporated by reference into the complaint)[4] that a final agreement was not reached, the Complaint makes clear that any use of the Apple Dance occurred either (1) during the course of an active licensing negotiation or (2) with Plaintiff's tacit and express consent. As Plaintiff's Complaint admits, she engaged in business discussions with Roblox in August 2024 regarding a license to use the Apple Dance in connection with a Charli xcx-themed emote on the Roblox platform. (Compl. ¶ 16.) She further alleges that she "was willing to permit the use of the Apple Dance as a Roblox emote" on the

---

[3] "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Field v. Google Inc.*, 412 F.Supp. 2d 1106, 1116 (D. Nev. 2006) (granting Google an entitlement to use the implied license defense where plaintiff, armed with the knowledge of how Google would use copyrighted works and with knowledge that he could prevent such use, did not object to the use in a timely manner."); *Gen. Elec. Co. v. Porter*, 208 F.2d 805, 813 (9th Cir. 1953) ("It is elementary, however, that acceptance may be made by express words or by conduct.").

[4] Courts are not required to accept as true allegations in a complaint that are contradicted by documents properly subject to judicial notice or incorporated by reference. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("[W]e need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)); *Agua Caliente Band of Cahuilla Indians v. Riverside Cnty.*, 181 F. Supp. 3d 727, 732 (C.D. Cal. 2016); *Fisher v. Nissel*, No. CV 21-5839-CBM-(KSX), 2022 WL 16961479, at *4 (C.D. Cal. Aug. 15, 2022) (granting motion to dismiss where the plaintiff's allegations of copyright ownership were contradicted by public Copyright Office records).

condition that the parties execute an agreement. (*Id.*) Plaintiff does not allege that she revoked this consent, nor that the emote's brief release during the negotiation period violated any clearly defined limit, nor that she objected to the emote's brief availability on the platform during the course of these discussions. To the contrary, the Complaint alleges that negotiations remained active through November 2024. (*Id.* ¶ 18.)

Federal courts, including the Ninth Circuit, routinely reject copyright infringement claims that arise from failed business negotiations rather than unauthorized exploitation. In *Effects Associates, Inc. v. Cohen*, for example, the Ninth Circuit held that where the plaintiff delivered film footage to a producer with the expectation it would be used in a movie, this conduct constituted an implied nonexclusive license and barred a subsequent copyright claim. 908 F.2d at 558–59. The court emphasized that an implied license existed where a work was "intend[ed]" for "copy and distribut[ion]." *Id* at 558; *see also Asset Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 757 (9th Cir. 2008) (finding that an implied license existed allowing the use of plaintiff's software). Likewise, in *I.A.E., Inc. v. Shaver*, the Seventh Circuit rejected an infringement claim brought by an architect whose schematic drawings were used after negotiations broke down. The court held that, because the architect prepared and delivered the drawings in furtherance of a contemplated project, his conduct gave rise to an implied nonexclusive license. 74 F.3d 768, 775-76 (7th Cir. 1996). The court emphasized that nonexclusive licenses may be implied from conduct, and that once granted, they permit use of the work as contemplated—even if the broader deal later falls apart. *Id.* at 775-76; *see also Asset Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 757 (9th Cir. 2008) (finding that an implied license existed allowing the use of plaintiff's software). In short, conduct consistent with mutual intent to allow use—particularly where there is ongoing business collaboration—bars a copyright claim.

And it should bar it here as well. Plaintiff admits that she and Roblox were actively negotiating a license—and that she was aware of the proposed use. She

acknowledges that she expressed willingness to license the Apple Dance and does not allege that she ever withdrew that willingness or notified Roblox that any use would be considered infringing. (Compl. ¶¶ 16–18.) Moreover, Plaintiff concedes that Roblox removed the emote after the negotiations ceased, without further commercial use. (*Id*. ¶ 18.) Accordingly, Plaintiff does not plausibly allege that Roblox acted outside the bounds of its negotiations, exceeded any scope of consent, or that she revoked her permission. These allegations are incompatible with a claim of infringement. Indeed, all one needs to do is take a step back and see that the gravamen of this case is not actually premised on unauthorized copying, but is really just about Plaintiff seeking to renegotiate terms to which she had already agreed. The law is clear that where the alleged infringing use occurs in the shadow of ongoing licensing negotiations, and with the plaintiff's cooperation or knowledge, no claim for infringement lies. *See Effects Associates*, 908 F.2d at 559; *I.A.E.*, 74 F.3d at 775.

But the issue runs deeper. Around the same time the Apple Dance became widely used, Plaintiff publicly posted on social media that it was "okay if someone doesn't tag me in the caption of their dance" and that "this whole thing has gotten really huge which is amazing!" (*See* Hammon Decl., ¶ 3, **Exhibit B** (Plaintiff's TikTok post, July 4, 2024).) She wrote: "If people tag me, that's great, if people don't tag me, that's okay too!!" and emphasized that it was "embarrassing" to be seen as "begging for dance credit." (*Id*.) She concluded by celebrating that "something I made to a song I really love is now being loved by other people," and encouraged fans to "just be kind to each other." (*Id*.) These public statements undermine her claims. Among other things, they confirm that Plaintiff not only knew of the Apple Dance's widespread use by others—including Charli xcx and her fans—but explicitly embraced it. She did not object, demand takedowns, or claim infringement. She gave the opposite message: that use without attribution was acceptable and that she welcomed the dance's viral adoption. *See Interscope Recs. v. Time Warner, Inc.,* No. CV101662SVWPJWX, 2010 WL 11505708, at *2, *9 (C.D. Cal. June 28, 2010)

(finding there could be an implied license where defendant Time Warner Cable
alleged Universal Music Group actively encouraged the defendants to use Universal's
sound recordings on the Ellen DeGeneres Show "so that the artists could profit from
the Show's popularity"). Such statements undercut any argument that Roblox's use—
particularly one allegedly tied to Charli xcx's music—was unauthorized or
exploitative. Courts routinely treat public, affirmative acts of acquiescence as
evidence of implied license. *See I.A.E.*, 74 F.3d at 775. Plaintiff cannot simultaneously
encourage others to use the Apple Dance without attribution, and then retroactively
claim infringement when a party she was negotiating with briefly uses the same brief
dance moves.

Because Plaintiff has not plausibly alleged that Roblox acted outside the scope
of the licensing discussions—or that any use of the Apple Dance was made without
her knowledge or in defiance of her rights—her infringement claim must be
dismissed.

## C. Plaintiff's Unjust Enrichment Claim Is Preempted by the Copyright Act.

Plaintiff's second cause of action for unjust enrichment fails as a matter of law
because it is entirely preempted by the Copyright Act. When a plaintiff asserts a state
law claim that seeks to vindicate rights equivalent to those protected by the federal
copyright statute, the claim is preempted under 17 U.S.C. § 301(a) and must be
dismissed. To determine whether preemption applies, courts in the Ninth Circuit apply
a two-part test: (1) whether the subject matter of the state law claim falls within the
subject matter of copyright, and (2) whether the rights asserted under state law are
equivalent to the exclusive rights granted under 17 U.S.C. § 106. *See Kodadek v. MTV
Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). Here, both prongs are satisfied.

**First**, Plaintiff's unjust enrichment claim is based entirely on Roblox's alleged
use of the Apple Dance, which is the same subject matter as her copyright claim.
(Compl. ¶¶ 32–35.) Courts have held that works of choreography fall within the

subject matter of the Copyright Act for preemption purposes.[5] *See* 17 U.S.C. § 102(a)(4) (choreographic works); *Brantley v. Epic Games*, *Inc.,* 463 F. Supp. 3d 616, 627 (D. Md. 2020) (holding unjust enrichment claim based on alleged use of dance in video game was preempted by the Copyright Act because it arose solely from the alleged unauthorized use of a work within the subject matter of copyright).

**Second**, the unjust enrichment claim seeks to redress the same alleged conduct—namely, the copying and use of the Apple Dance without a finalized license—that forms the basis of the copyright infringement claim. Plaintiff alleges Roblox "marketed for itself," "sold," and "profited from" the Apple Dance. (Compl. ¶¶ 32–34.) These are simply restatements of the exclusive rights granted under 17 U.S.C. § 106 (*i.e.*, reproduction, public display, and distribution). Because the claim does not require any extra element beyond what is required to establish copyright infringement, it is preempted. *See Laws v. Sony Music Ent., Inc*., 448 F.3d 1134, 1144 (9th Cir. 2006) ("To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights."). The fact that Plaintiff seeks to recover "benefits" and "profits" that allegedly flowed from Roblox's use of the emote does not save the claim. Remedies do not determine preemption—rights do. And where, as here, the right allegedly violated is the right to control copying and distribution of a creative work, the claim is squarely within the Copyright Act and must be dismissed. *See Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129, 1189-95 (C.D. Cal. 2001) (State law claims which are not "qualitatively different" from a copyright infringement claims are preempted.).

Because Plaintiff's unjust enrichment claim arises from the same facts, involves the same conduct, and seeks to vindicate rights already governed exclusively by

---

[5] Roblox does not concede that the Apple Dance is actually copyrightable and reserves the right to challenge copyrightability if this case proceeds past the instant briefing.

federal copyright law, it is preempted and must be dismissed with prejudice.[6]

## V.    **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint in its entirety and with prejudice. Plaintiff has not alleged a valid copyright and lacks a registration sufficient to confer standing under the Copyright Act. Moreover, she has not even adequately alleged an unauthorized use. Finally, her lone non-copyright claim, one for unjust enrichment claim, is preempted in its entirety by federal law. Because these are incurable defects that go to the legal viability of Plaintiff's claims—not matters of pleading detail—amendment would be futile. Roblox respectfully requests that this Court grant its Motion to Dismiss with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: May 22, 2025                  PILLSBURY WINTHROP SHAW PITTMAN LLP

_/s/ Patrick Hammon_
PATRICK HAMMON

Attorneys for Defendant,
ROBLOX CORPORATION

---

[6] Moreover, unjust enrichment is not a standalone cause of action in California. *See Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 809 (C.D. Cal. 2024) ("In California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'") (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Since Plaintiff's copyright infringement claims must be dismissed, the unjust enrichment claim cannot remain.